Stephen A. BARZELIS et al., Plaintiffs,

v.

Frank J. KULIKOWSKI et al.,
Defendants.

Frank J. KULIKOWSKI and Marie Ann
Kulikowski, Cross-claimants and
Appellees,

v.

Petra WILLIAMS, Cross-defendant and
Appellant.

No. 22635.

United States Court of Appeals
Ninth Circuit.

Oct. 31, 1969.

Rehearing Denied Nov. 26, 1969.

Mark Wilmer (argued), of Snell &
Wilmer, Phoenix, Ariz., for appellant.

Kenneth Rosengren (argued), Phoenix, Ariz., for appellees.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and PENCE*,
District Judge.

DUNIWAY, Circuit Judge:

Cross-defendant Williams appeals from
a judgment and order denying her motion for a new trial in an action for personal injuries arising from an automobile accident. Jurisdiction of the action
is based upon diversity of citizenship
between the original plaintiffs and defendants. Appellant's only attack is on
the order denying her motion for a new
trial.

Appellant first argues that the
verdict is excessive. She bases her argu-

* Honorable Martin Pence, United States District Judge, District of Hawaii, sitting by designation.

ment in part upon the fact that the amount awarded is the exact amount for which appellee's counsel argued. A jury, however, does not have to give reasons for what it does. The coincidence, while interesting, is not determinative. The proper test is stated in our decision in Siebrand v. Gossnell, 9 Cir., 1956, 234 F.2d 81, 94:

"Absent a total want of evidence on all or certain portions of the case, or the erroneous exclusion from consideration by the trial court of appropriate matters or a showing of bias or prejudice on the part of the jury, this court may not reverse the trial court unless the verdict can be said to be grossly excessive or monstrous * * *."

Appellant does not bring herself within that test. The evidence supports the verdict. It is not enough that we might, as the triers of fact, have awarded less. See also United States v. Becker, 9 Cir., 1967, 378 F.2d 319, 324; Young Candy & Tobacco Co. v. Montoya, 1962, 91 Ariz. 363, 372 P.2d 703; Fulton v. Johannsen, 1966, 3 Ariz.App. 562, 416 P.2d 983.

■ Second, appellant argues that the verdict makes an allowance to appellee Mrs. Kulikowski for loss of earning capacity which is not supported by the record. But her injuries, as shown by the evidence, are such as to make it unlikely that her earnings will increase as they otherwise might, and likely that they may decrease. The issue was submitted to the jury under instructions to which appellant's counsel did not object.

■ Third, appellant vigorously attacks appellee's counsel's argument to the jury. We certainly do not approve it. He indulged in obsequious flattery of the jury, describing himself as "a servant of the jury."[1] He appealed to their personal prejudices: "I know from having reviewed your backgrounds that some of you know what it means to be on crutches." He wrapped himself in the canons of ethics: "as an officer of this court * * * bound by the ethics of the profession," while skirting as closely as he dared to the limit of the canon that makes it "improper for a lawyer to assert in argument his personal belief * * * in the justice of his [client's] cause." (A.B.A. Canons of Professional Ethics, canon 15.)

The difficulty is that appellant's counsel did not object to this line of argument. Instead, he elected to sit silent, answering the argument by characterizing it as chicanery and trickery. The strategy did not work. But we have not yet so far abandoned the adversary sys-

---

1. The following is the peroration of counsel's closing argument:

"Let me just conclude with some poetic words, it seems to me that to sum up the hopes and dreams and aspirations of what we want from a jury:
A jury reflects the attitudes and the mores of the community from which it is drawn;
It convenes only for the day and does justice according to its lights;
The group of 12 who are drawn to hear a case makes the decision and melts away.
It is the one governmental agency that has no ambition.
It is as human as the people who make it up, so it sometimes is the victim of passion, but it also takes the sharp edges off the law and uses conscience to ameliorate a hardship.
Since it is of and from the community, it gives the law an acceptance which verdicts of judges could not do.
The jury has a profound educational impact upon the community.
You are here to right wrongs, and you have broad latitude to ameliorate a hardship.
All I really ask from you is that you have the courage of your convictions and not water them down so that we have a mamby-pamby, indecisive situation where there is vacillation or hesitation or indecisiveness.
Be forthright and be fair, and bring us in a verdict, ladies and gentlemen, which when you go to sleep tonight will make you feel good.
And if perchance five years hence, fusion or not, you run into Marie on the street some place, you can face her and say to her, 'Marie, I thought then, and I think now that we did the right thing in your case.' "
We have a low opinion of the planting of this kind of corn in a federal courtroom.

tem, at least in civil cases, that counsel can sit by without objecting when such an argument is made, raise the question for the first time after the argument or on motion for a new trial, and, after his motion is denied, expect us to reverse on appeal. The trial judge was there; we were not. He more than once told the jury "that statements of counsel are not evidence." He did not think the verdict was so infected as to require a new trial. We cannot, on this record, say that he was wrong.

Affirmed.